UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
DAVID WEISS                          :   CIVIL ACTION NO.

   Plaintiff,                        :   06 CV 4402

vs.                                  :

JPMORGAN CHASE & COMPANY             :

   Defendant.                        :   June 12, 2006
-------------------------------------------------------------x

## COMPLAINT

### PRELIMINARY STATEMENT

1. The plaintiff, David Weiss, brings claims against his former employer, the defendant, JPMorgan Chase & Company ("JPMorgan Chase"), for discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-101 et seq. ("NYCHRL").

2. Plaintiff requests a trial by jury on all issues triable to a jury.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and § 1367, and 29 U.S.C. §§ 621 et seq.

4. The plaintiff timely filed his administrative complaint under ADEA with the United States Equal Employment Opportunities Commission.

5. The plaintiff received a Notice of Right to Sue from the Equal Employment Opportunities Commission on March 23, 2006. Less than 90 days have elapsed.

6. Less than three years have elapsed since the plaintiff's claim arose under the NYCHRL.

-1-

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

8. The plaintiff, David Weiss, was, at all times mentioned herein, a resident of Fairfield, Connecticut and an employee of the defendant at its New York headquarters.

9. The defendant, JPMorgan Chase & Company (hereinafter "JPMorgan Chase") was, at all times mentioned herein, a global business with its corporate headquarters located at 270 Park Avenue, New York, NY 10017.

## STATEMENT OF FACTS

10. Mr. Weiss began working at what is now known as JPMorgan Chase in May 1991. While working at JPMorgan Chase, Mr. Weiss was instrumental in starting and building the defendant's High Yield business. He consistently was the top producer in the High Yield group and was eventually named head of Sales for the High Yield group, supervising thirteen employees.

11. As head of Sales for the High Yield Group, Mr. Weiss had a broad range of job responsibilities. These included: managing the daily activities of the sales team; maintaining client relationships; allocation of new issues; reviewing account performance by salespeople and making changes when necessary; completing six-month and year-end performance reviews; consulting on the organization of road shows and the timing of management presentations; developing reports; organizing and conducting regular meetings of the High Yield management team that included the heads of sales, trading, capital markets, origination, research and business management; and consulting with the marketing group for credit derivatives to help expand the use of derivatives by high yield investors. In addition to his regular job duties, Mr. Weiss was

also involved in expanding the reach of the group through hedge funds, recruiting, sales training seminars and community service and organizing golf and ski outings to instill greater camaraderie within the group.

12. Under Mr. Weiss's leadership, the High Yield Sales group grew in size and prestige so that, by 2004, the sales team was included among the top-ranked (No. 1 and No. 2) teams by two different measures in the Orion Associates' annual survey.

13. Mr. Weiss directed the defendant's High Yield Sales division until Defendant terminated his employment on March 15, 2005.

14. During Mr. Weiss's tenure at JPMorgan Chase, the defendant utilized two different methods of employee evaluations. One method was based on a "1, 2, 3" scale with "1" being the best score. The other method rated employees as "exceeds expectations," "meets expectations," or "needs improvement."

15. Mr. Weiss consistently earned "1s" and "2s" or "exceeds expectations" and "meets expectations" during his tenure with JPMorgan Chase. On his last review in December 2004, Mr. Weiss earned a rating equivalent to a "2+."

16. Mr. Weiss had reported to Jeffrey Flug, JPMorgan Chase's National Sales Manager, for approximately five years before November 2004.

17. In November 2004, Mr. Weiss met with Mr. Flug. Mr. Flug informed Mr. Weiss that, although Mr. Weiss would begin to report to Brian Weadock, head of All Credit Sales for JPMorgan Chase, his position with the defendant was not going to change.

18. On or around January 31, 2005, while at a conference in Miami, James Lee, Jr., Vice Chairman of the Investment Banking division for JPMorgan Chase, told a large audience of over

500 people that "Dave Weiss is the best in the world at what he does."

19. Jonathan Gray, co-head of JPMorgan Chase's High Yield and High Grade Sales and Trading division, and Mr. Weadock have both referred to Mr. Weiss as "old school" in his thinking and demeanor.

20. In February 2005, Mr. Flug took a leave of absence for personal reasons. Mr. Weiss then reported solely to Mr. Weadock.

21. In early March 2005, upon the resignation of Shabbir Jasdanwala, a salesman in the High Yield group, Mr. Weiss advised Mr. Weadock that he would assume coverage of some of Mr. Jasdanwala's accounts, making himself a producing sales manager, a position he had held previously before being asked by Mr. Flug and Peter Schmidt-Fellner, one of Mr. Weiss's former supervisors, to become a full-time sales manager.

22. On March 15, 2005, Mr. Weiss met with Mr. Weadock, who told him that his position was eliminated.

23. At this meeting, Mr. Weadock stated that "it's time for a change," but gave no other reason for Mr. Weiss's termination, other than the alleged elimination of his position.

24. That same day, Mr. Weiss received a letter from Audrey Brahms, Defendant's Vice President of Human Resources, informing him that he was terminated because his "position will be eliminated."

25. However, on March 16, 2005, one day after Mr. Weiss's termination, Carlos Hernandez, head of Origination and Distribution for Defendant, announced that Tony McCann, a salesman in High Yield Sales, would be promoted to head of High Yield Sales, which was the same position from which Defendant terminated Mr. Weiss. Mr. McCann had reported to Mr. Weiss. Mr.

McCann would now report to Mr. Weadock.

## COUNT ONE

### (Age Discrimination Under ADEA)

26. Paragraphs 1 through 25 are hereby incorporated as paragraphs 1 through 25 of Count One.

27. Mr. Weiss is a member of a protected class under the ADEA. At the time of his termination, he was 57 years of age.

28. Mr. McCann, age 40 at the time of Mr. Weiss's termination, is substantially younger than Mr. Weiss.

29. Mr. Weiss is more qualified and has considerably more skills and experience than Mr. McCann for the new producer sales manager position in the High Yield group.

30. Mr. Weiss's position was not eliminated. Rather, Mr. McCann assumed Mr. Weiss's position and responsibilities.

31. Mr. Weiss's age was a factor that made a difference in the termination of his employment by the defendant.

32. As a result of the defendant's actions, the plaintiff has suffered and will continue to suffer economic harm.

## COUNT TWO

### (Age Discrimination Under the NYCHRL)

33. Paragraphs 1 through 32 are hereby incorporated as paragraphs 1 through 32 of Count Two.

34. Defendant intentionally discriminated against Mr. Weiss in violation of the NYCHRL by

terminating his employment based on his age.

35. As a direct and proximate consequence of Defendant's intentional, unlawful, and discriminatory, treatment of Mr. Weiss, he has suffered and continues to suffer monetary damages including, but not limited to, a loss of income, including salary, deferred compensation and company-sponsored benefits, and has had to incur attorneys' fees and the costs of this action.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully requests that this Court enter judgment:

a. declaring that the defendant violated ADEA and the NYCHRL by subjecting the plaintiff to discriminatory termination based upon his age;

b. directing the defendant to make the plaintiff whole for his past and future economic losses, including lost compensation, stock awards and options, benefits, bonuses and commissions;

c. awarding the plaintiff his reasonable attorney fees and costs;

d. awarding the plaintiff liquidated damages; and

e. such other relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated: New York, New York
June 12, 2006

Respectfully submitted,

By: /s/ Piper Hoffman
Piper Hoffman (PH 4990)
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

Joseph D. Garrison (CT 04132) (application for admission *pro hac vice* to be filed)
Lynda A. Rizzo (CT 25643) (application for admission *pro hac vice* to be filed)
GARRISON, LEVIN-EPSTEIN, CHIMES & RICHARDSON, P.C.
405 Orange Street
New Haven, CT 06511
Telephone: (203) 777-4425
Facsimile: (203) 776-3965

**Attorneys for Plaintiff**